## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

EDWARD N. MCCRAY                              CIVIL ACTION

VERSUS                                        NO.    15-1912

BUDDY CALDWELL                               SECTION "N"(5)

### REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).    For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

### *Procedural History*

Petitioner, Edward McCray, is a convicted inmate incarcerated in Elayn Hunt Correctional Center in St. Gabriel, Louisiana.    In 2005, he was charged by grand jury indictment with second-degree murder.    On August 14, 2009, following a four-day jury trial, he was found guilty as charged.[1]    On September 29, 2009, he was sentenced to life

---

[1] State Rec., Vol. 1 of 7, Minute Entry, August 14, 2009.

imprisonment.[2]    His motion for new trial, motion for post-verdict judgment of acquittal and motion to reconsider sentence were subsequently denied.    McCray appealed his conviction and sentence.

On direct appeal, McCray assigned a single error, *i.e.*, the trial court erred in proceeding to trial without a competency determination.    The court of appeal noted that the claim had possible merit, but conditionally affirmed the conviction and sentence.    The case was remanded for a determination regarding whether a meaningful inquiry into McCray's competence at the time of trial was possible and, if so, for an evidentiary hearing and determination on the issue.[3]

On remand, the trial court determined that McCray was indeed competent to stand trial.    McCray sought a second appeal in which he assigned as error the trial court's failure on remand to follow the unambiguous instructions of the appellate court and ineffective assistance of counsel on remand.    The court of appeal rejected the two assignments of error and affirmed the conviction and sentence.[4]    McCray did not seek discretionary review by writ of certiorari with the Louisiana Supreme Court.

On or about April 4, 2013, he filed an application for post-conviction relief with the

---

[2]  State Rec., Vol. 1 of 7, Minute Entry, September 29, 2009.

[3]  State Rec., Vol. 5 of 7, *State v. McCray*, 2010-0504, 2010 WL 5464930 (La. App. 1st Cir. 12/22/10).

[4]  State Rec., Vol. 7 of 7, *State v. McCray*, 2011-1913, 2012 WL 1552257 (La. App. 1st Cir. 5/2/12).

state district court in which he asserted seven grounds for relief:    (1) he is actually innocent of the crime of conviction; (2) trial counsel was ineffective for failing to conduct adequate investigation and subpoena witnesses; (3) the prosecutor knowingly introduced false evidence; (4) the State withheld material evidence from the defense; (5) his conviction was based upon insufficient evidence; (6) appellate counsel was ineffective for failing to raise claims on appeal; and (7) he was denied the right to compulsory process for obtaining witnesses.[5]    The state district court denied relief on January 23, 2014.[6]    The district court summarily rejected the majority of the claims raised as procedurally improper and unauthorized under state law and also found the claims meritless.    The district court specifically addressed and rejected the ineffective-assistance-of-trial counsel claim and the *Brady* claim on the merits.    On or about February 10, 2014, McCray filed a related writ application with the Louisiana First Circuit Court of Appeal.[7]    That application was denied on June 2, 2014.[8]    On or about June 18, 2014, McCray filed a supervisory writ application

---

[5]   State Rec., Vol. 6 of 7, Uniform Application for Post-Conviction Relief signed April 4, 2013.    Although his application listed eight grounds for relief, the state district court noted in its judgment that the eighth claim, which was not separately briefed, was merely repetitive of other claims of ineffective assistance of counsel.

[6]   State Rec., Vol. 6 of 7, Judgment denying Post-Conviction Relief.

[7]   State Rec., Vol. 7 of 7, Louisiana First Circuit Writ Application No. 2014-KW-0231.

[8]   State Rec., Vol. 6 of 7, *State v. McCray*, 2014-KW-0231 (La. App. 1st Cir. June 2, 2014) (unpublished writ ruling).

in the Louisiana Supreme Court.[9]    That writ application was denied on May 22, 2015.[10]

On May 28, 2015, McCray filed his federal application for *habeas corpus* relief, asserting seven grounds for relief: (1) the state courts erred in refusing to consider and denying multiple claims on procedural grounds; (2) his conviction was based upon insufficient evidence; (3) trial counsel was ineffective for failing to conduct adequate investigation and subpoena witnesses; (4) the state prosecutor knowingly introduced false evidence at trial; (5) the State withheld material evidence from the defense; (6) appellate counsel was ineffective for failing to raise issues on appeal; and (7) he was denied the right to compulsory process for obtaining witnesses for trial.[11]

The State filed a response, conceding that the federal application is timely.[12]    The response raises issues with respect to exhaustion and procedural default (claims two, four, six and seven) and addresses the remaining claims (one, three and five) on the merits. McCray filed a reply in opposition to the State's response.[13]

---

[9]  State Rec., Vol. 7 of 7, Louisiana Supreme Court Application for Supervisory Writ No. 14-KH-1379.

[10]  State Rec., Vol. 7 of 7, *State ex rel. McCray v. State*, 2014-KH-1379 (La. 5/22/15), 170 So.3d 974.

[11]  Rec. Doc. 1, Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254.

[12]  Rec. Doc. 11.

[13]  Rec. Doc. 16.

*Facts*

The following facts were established at trial and summarized by the Louisiana First

Circuit Court of Appeal:

> Joseph Pierre, also known as Toby, lived in a trailer on Pierre Cemetery Road in Folsom, St. Tammany Parish. There was a second trailer on the Pierre property next to the trailer in which Toby resided. Toby let his friend Mallery Magee, who also lived in Folsom and temporarily needed a place to live, stay in that second trailer. On the afternoon of August 7, 2005, Toby was cutting the grass when the defendant approached him and asked him for a place to stay. Toby knew the defendant, who was from the Folsom area. Toby told the defendant he could stay one night in Mallery's trailer. The defendant had a red duffle bag with him. That same evening, Toby, Mallery, and the defendant went to Jr. Food Mart to pick up beer. On the way back from the store, they picked up Mary Allen, Toby's friend. Mary had not seen the defendant before, but she knew Mallery.
>
> The four of them went back to Mallery's trailer. They drank beer and some of them smoked crack cocaine, which Mallery provided.[14]  Later, Toby and Mary went next door to Toby's trailer, while Mallery and the defendant remained in Mallery's trailer. About forty-five minutes later, there was a knock at Toby's door. Toby opened the door and he and Mary saw the defendant standing there with a hammer in his hand. Moments later, Toby saw Mallery, completely naked, stagger from his trailer bleeding profusely from the head. Yelling, Toby asked the defendant what had he done and why did he do it. The defendant told Toby they had a fight. Toby helped Mallery over to a tree and sat him down. Toby and Mary retrieved towels from Toby's trailer to place on Mallery's head. Toby drove the defendant about a mile away and dropped him off. The defendant had his duffel bag. Toby returned and asked a neighbor to call 911. Mallery died from his wounds. The next day, the defendant was arrested in a dilapidated trailer on his father's property in Tangipahoa Parish. The defendant had his red duffel bag with him. Inside the duffel bag was a hammer partially wrapped in a shirt and plastic bag. The defendant had $680

---

[14]  It is likely Mallery did not smoke crack cocaine since his autopsy indicated there were no drugs in his system. However, the autopsy revealed Mallery had a .279 BAC level. Mary testified at trial that she did not smoke crack cocaine while everyone was in Mallery's trailer, but she did smoke it when she and Toby went to Toby's trailer.

in cash, all in twenty-dollar denominations.

Dr. Michael Defatta, a forensic pathologist who performed the autopsy on Mallery, testified at trial that Mallery had several large gaping lacerations on his head, as well as abrasions on his chest and back. Some of the lacerations on the head were from a blunt force or crushing effect from an object. One laceration was linear, while another laceration was curvilinear. According to Dr. Defatta, the wounds could have been caused by different surfaces of the same object. In his opinion, that sort of crescent-shaped injury was usually caused from some type of hammer. Further, the side of the hammer may have caused the linear abrasion. Mallery died from a loss of blood.[15]

*Standards of Review on the Merits*

Title 28 U.S.C. § 2254(d) (1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.      A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").      With respect to a state court's determination of pure questions of law or

---

[15]  *State v. McCray*, 2010 WL 5464930, at * 1 (La. App. 1st Cir. 12/22/10) (footnote in original).

mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010). An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. A state court's merely incorrect application of Supreme Court precedent simply does not warrant *habeas* relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir.2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an

incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").    "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA."    *Harrington v. Richter*, 562 U.S. 86 (2011).    Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents."    *Harrington*, 562 U.S. at 102 (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal *habeas corpus* review as a vehicle to second-guess the reasonable decisions of state courts.").

*Analysis*

1. *State-court post-conviction error (Claim 1)*

McCray asserts that the state courts erroneously refused to rule on his claims that were not specifically authorized in the "Claims for Relief" section of the uniform application for post-conviction relief approved by the Louisiana Supreme Court.    To the extent that McCray disputes the ruling by the state courts on post-conviction relief as erroneous, this claim fails to implicate a basis for federal *habeas corpus* relief.    Federal *habeas corpus* is not the proper means by which prisoners should challenge alleged errors or deficiencies in state post-conviction proceedings.    As the United States Fifth Circuit Court of Appeals has explained:

> [O]ur circuit precedent makes abundantly clear that errors in state post-
> conviction proceedings will not, in and of themselves, entitle a petitioner to

> federal habeas relief. *See, e.g., Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th
> Cir.1997) ("[I]nfirmities in state habeas proceedings do not constitute
> grounds for relief in federal court."); *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th
> Cir.1995) ("An attack on a state habeas proceeding does not entitle the
> petitioner to habeas relief in respect to his conviction, as it is an attack on a
> proceeding collateral to the detention and not the detention itself.") (internal
> quotations omitted). Rather, we must find constitutional error at the trial or
> direct review level in order to issue the writ.

*Morris v. Cain*,186 F.3d 581, 585 n.6 (5th Cir.1999).

To the extent that he claims the state courts misapplied state law, that claim likewise fails to provide a basis for federal *habeas corpus* relief.     A federal court may review a state prisoner's *habeas* petition only for violations of the Constitution, laws or treaties of the United States.    28 U.S.C. § 2241(c)(3); § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Gonzales v. Thaler*, 643 F.3d 425, 429 (5th Cir. 2011); *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992).    A federal court may not issue a writ of *habeas corpus* "on the basis of a perceived error of state law."    *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Cook v. Morrill*, 783 F.2d 593, 596 (5th Cir.1986).    Hence, this claim is not cognizable in a federal *habeas corpus* proceeding.

In any event, the factual premise for McCray's contention is misplaced.    He disputes the district court's reliance on language contained in the uniform application for post-conviction relief form which restricts the nature of claims a petitioner may raise.    However, the pertinent consideration for this Court when considering a procedural bar is the last reasoned decision in the matter, which in this case was not the state district court.    *See Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).    In determining

that the claims should not be considered, the Louisiana First Circuit based its decision and affirmance upon clearly established Louisiana Code of Criminal Procedure article 930.4(B) and (C), not the uniform application for post-conviction relief as McCray submits.    The Louisiana Supreme Court likewise denied relief.    For these reasons, McCray clearly is not entitled to *habeas* relief on this claim.

2. *Ineffective Assistance of Trial and Appellate Counsel (Claims 3 and 6)*

McCray asserts that he received ineffective assistance of counsel at trial and on appeal.    He claims that his trial attorney was ineffective for failing to conduct adequate investigation in preparation for trial and for failing to subpoena several defense witnesses. He argues that appellate counsel was ineffective for failing to investigate the false nature of the State's evidence against him and for failing to raise ineffective assistance of trial counsel or a *Brady/Napue* claim on appeal.    The state district court considered and rejected the claim of ineffective assistance of trial counsel on the merits.    The court of appeal considered this claim, as well as the claim of ineffective assistance of appellate counsel, and denied both claims on the merits.    The Louisiana Supreme Court denied relief without assigning additional reasons.

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel.    Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense.    *Strickland v. Washington*, 466 U.S. 668, 697 (1984).

A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d at 296; *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir.2000).    If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e.* deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.    *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.    *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir.2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness."    *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir.1998).    Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.    *See Strickland*, 466 U.S. at 689.    "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"    *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).    A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.    *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir.1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir.1985).

The appropriate standard for determining prejudice varies slightly depending on whether a petitioner is challenging the actions of trial or appellate counsel.    In order to

prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Strickland*, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*.   In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."   *Crockett*, 796 F.2d at 793.   On the other hand, to prove prejudice with respect to a claim that appellate counsel was ineffective, a petitioner must show a reasonable probability that he would have prevailed on appeal but for his counsel's deficient representation.   *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir.2001); *see also Smith v. Robbins*, 528 U.S. 259, 286 (2000).

Because the state courts rejected his ineffective assistance of counsel claims on the merits and because such claims present a mixed question of law and fact, this Court must defer to the state-court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."   28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir.2002). Moreover, the United States Supreme Court has held that, under the AEDPA, federal *habeas corpus* review of ineffective-assistance-of-counsel claims is doubly deferential.   *Burt v. Titlow*, 134 S.Ct. 10, 13, 187 L.Ed.2d 348 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011).

A.    *Trial Counsel*

McCray first alleges that counsel did not "read, review or investigate the pretrial discovery and inspection material the state provided to him in this case before trial."[16]    He also claims that additional investigation would have revealed that he was never in possession of a silver flip cell phone purportedly belonging to the victim, and thus refuted the State's position that he took it from the victim by force while armed with a dangerous weapon.[17]

"Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."    *Strickland*, 466 U.S. at 691. "A particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments."    *Id.*

Furthermore, to satisfy the burden under *Strickland*, a petitioner "'who alleges a

---

[16]  Rec. Doc. 1, p. 50.

[17]  Louisiana Revised Statute 14:30.1(A) defines second degree murder as the killing of a human being: (1) "[w]hen the defendant has a specific intent to kill or to inflict great bodily harm" or (2) "[w]hen the offender is engaged in the perpetration or attempted perpetration of ...[] armed robbery..., even though he has no intent to kill or to inflict great bodily harm."    La. R.S. 14:30.1(A)(1)(2).    McCray assumes that the State's proof did not suffice to show that he had the requisite specific intent to kill the victim because two witnesses testified that the victim was still alive (albeit fatally injured) when McCray left the premises after the altercation.    He maintains "its to be inferred that McCray would have continued to strike Magee and would not have stopped striking Magee until Magee was either unconscious or dead."    The State therefore, in McCray's opinion, had to show instead that his death occurred during the perpetration of an armed robbery and relied upon the victim's cell phone to do so.

failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'" *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir.2010) (quoting *United States v. Green*, 882 F.2d 999, 1003 (5th Cir.1989)); *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir.1998).    The petitioner must provide factual support demonstrating what exculpatory evidence further investigation would have revealed.    *Moawad*, 143 F.3d at 948; *Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir.2005); *Davis v. Cain*, No. 07–6389, 2008 WL 5191912, at * 10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).    A petitioner cannot show prejudice as to a claim that his counsel failed to investigate without adducing what the investigation would have shown and that the outcome would have been different as a result. *Diaz v. Quarterman*, 239 F. Appx 886, 890 (5th Cir.2007) (citing *Strickland*, 466 U.S. at 696). For these reasons, brief and conclusory allegations that the attorney's representation was deficient because of a failure to investigate and develop useful evidence will not suffice. *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir.1994).

    The record in this case shows that defense counsel was provided open file discovery at his request.[18]    The trial transcript reflects that defense counsel was aware of the cell phone and pertinent details surrounding the investigation of that piece of evidence as

---

[18]    State Rec., Vol. 1 of 7, Motion for Discovery filed June 9, 2009; *see also* State's response filed July 15, 2009.

included in the police reports.[19]    Near the end of trial, Detective Dale Galloway testified that detectives recovered a silver cell phone from a Mrs. Serpas, who found the phone in the grass near her property on Lee Settlement Road (where Toby testified he dropped McCray off after the incident) and called police.    Detective Galloway testified that he determined the account for the mobile phone was in the name of the victim.    Based on the phone records obtained, detectives were able to determine the last outgoing phone number dialed from the mobile phone.    Detective Galloway testified that he called that number and a man answered, identifying himself as Roy McCray.    The property at which the defendant was located and arrested belonged to his father, Roy McCray.    Defense counsel lodged an objection to the prosecutor's line of questioning regarding the cell phone, but that objection was overruled.[20]

McCray contends additional investigation would have shown that the information possessed by the State was false and the phone records did not match the silver phone because it did not belong to the victim.    Despite the fact that he candidly admits having the victim's cell phone, he maintains the phone he was in possession of was black, not silver, and that Toby gave him the cell phone to use when he dropped him off following the altercation.[21] He suggests that the police obtained records only on a cell phone number belonging to the

---

[19]    State Rec., Vol. 4 of 7, Transcript of Trial (August 14, 2009), pp. 713, 716.

[20]    *Id.* at 713.

[21]    Rec. Doc. 1, p. 51; Rec. Doc. 16, p. 19.

victim, but have never confirmed that the records are associated with that silver phone or even that the phone belonged to the victim. His assertion is unsupported and purely speculative. Any failure on the part of counsel to conduct further investigation was objectively reasonable under the circumstances. No amount of investigation into this issue could refute the cell phone records linking McCray and the victim, regardless of which phone McCray actually possessed. Nor was there any reason to believe that Toby would confirm McCray's story. In fact, he testified he did not have a house phone or a cell phone available at the time of the incident and had to make a call to 9-1-1 from a neighbor's house.[22] Thus, further exploration of the issue was not reasonable or necessary. Nor was the cell phone the sole piece of evidence against McCray. The State's witnesses also established that McCray took money and drugs from the victim.

McCray has provided no factual support to demonstrate what exculpatory and beneficial evidence further investigation would have revealed. He offers only conclusory statements that additional investigation would have established that the information possessed by police was false. His self-serving and entirely speculative argument falls well short of proving the existence of exculpatory evidence that would have been found through further investigation.

Finally, the mere fact that defense counsel requested and was denied his third request for a continuance of the trial date (two others had been granted previously) for an apparent

---

[22] State Rec., Vol. 3 of 7 (August 12, 2009), p. 425-427.

miscommunication and late receipt of discovery has no bearing on his level of preparation for trial.   He acknowledged receipt of discovery weeks before trial and the trial record demonstrates that he was prepared for trial.[23]   The motion for continuance was denied eight days before jury selection was to begin on August 11, 2009, so he had ample time to review the file materials and prepare for trial.   Defense counsel objected to the line of questioning during Detective Galloway's testimony on hearsay grounds.   McCray offers nothing to show that that an objection on the grounds of perjury was reasonably likely to have been sustained.

In sum, McCray has brought forth no evidence establishing that there is a reasonable probability that further investigation would have revealed any information which, if it had been discovered and presented at trial, would have resulted in a different outcome at trial. Without such evidence, he cannot make the required showing that he was prejudiced by the allegedly inadequate investigation and his claim necessarily fails.   *Everett v. Louisiana*, Civ. Action No. 08–4745, 2009 WL 1971370, at *5 (E.D. La. July 7, 2009); *see also Twillie v. Rader*, Civ. Action No. 12–1421, 2012 WL 3990392, at *5 (E.D. La. Aug. 14, 2012), *adopted*, 2012 WL 3990490 (E.D. La. Sept. 10, 2012).

McCray also asserts that defense counsel was ineffective for failing to subpoena three witnesses for trial: Christine Gonzales, BJ and Allen Lee.   He offers no statements or

---

[23]  State Rec., Vol. 1 of 7, Motion for Continuance; *see also* State Rec., Vol. 4 of 7, Transcript of Hearing on Motion for Continuance (August 3, 2009).

affidavits from these witnesses.    He alleges in his supporting memorandum that the first two individuals would have offered alibi testimony to show he was with them at an entirely different location at the time of the incident, and that the third individual could have offered testimony that would have further damaged the credibility of a critical state witness, Annie Arispy, to whom he allegedly confided details about his confrontation with the victim.

The record demonstrates that defense counsel did issue a subpoena for defense witness, Christine Gonzales.    However, counsel determined at trial after consultation with McCray and with his assent, that the defense no longer wanted to call her as a witness.[24] Although he now denies that he agreed to this course of action, the record establishes otherwise.    Furthermore, although he implies she would have offered alibi testimony, any suggestion that he was present at BJ's house the evening of the murder does not negate the fact that he was also present that same evening at the trailer where the incident happened and that he admittedly had a physical confrontation there with the victim.    Therefore, her testimony would have had limited, if any, value to the defense, which was not based upon an alibi, but rather, upon the lack of physical evidence or eyewitnesses to the actual altercation linking McCray to the murder.

Although McCray argues that defense counsel only met with him four days before trial and therefore did not have adequate time to subpoena BJ or Allen Lee, the fact that he issued

---

[24]    State Rec., Vol. 4 of 7, p. 676; *see also* State Rec., Vol. 6 of 7, Motion and Order for Writ of Habeas Corpus Ad Testificandum.

a subpoena for Gonzales but not the other two individuals suggests that he had ample time, but simply chose not to subpoena these individuals.    As previously discussed, no alibi defense was available under the circumstances.    Thus, defense counsel reasonably could have deemed it unnecessary to pursue BJ's purported testimony that McCray was at his house the evening of the incident.

It was likewise not improper for defense counsel to rely on internal contradictions in a witness' testimony on cross-examination to challenge her credibility, rather than issuing a subpoena to defense witness Allen Lee for possible impeachment testimony on a relatively insignificant fact.    McCray argues that, had he been called, Allen Lee may have been able to further discredit a State witness' testimony by offering testimony on a tangential point regarding whether Annie did or did not ask him to give McCray a ride from her house to another individual's home in the days following the incident.    However, counsel may well have rejected the idea of calling Lee for this purpose as a matter of trial strategy, reasoning that the issue was not worthy of pursuit.    A review of the record shows that defense counsel on cross-examination effectively explored other avenues by which to impeach her credibility by pointing out numerous inconsistencies in her testimony.

Moreover, an overriding reason as to why the claim fails is that McCray provides no support for his allegations other than his own self-serving version of the witnesses' purported testimony.    As the United States Fifth Circuit Court of Appeals has explained:

> Claims that counsel failed to call witnesses are not favored on federal habeas
> review because the presentation of witnesses is generally a matter of trial

> strategy and speculation about what witnesses would have said on the stand is too uncertain. For this reason, we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense. This requirement applies to both uncalled lay and expert witnesses.

*Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir.2010) (citations, quotation marks, and brackets omitted); *see also Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir.2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

McCray has produced no evidence whatsoever, such as affidavits from uncalled witnesses, demonstrating that they would have testified in a manner beneficial to the defense. He has failed to offer anything concrete and objective to support his speculation as to their purported testimony. Therefore, he clearly has not met his burden with respect to this claim. *See, e.g., United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir.1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); *Buniff v. Cain*, Civ. Action No. 07–1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); *Anthony v. Cain*, Civ. Action No. 07–3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with

evidence, such as affidavits from the uncalled witnesses, on that issue."); *Combs v. United States*, Nos. 3:08–CV–0032 and 3:03–CR–01 88, 2009 WL 2151844, at * 10 (N.D.Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); *Harris v. Director, TDCJ–CID*, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

B. *Appellate Counsel*

McCray next argues that appellate counsel was constitutionally ineffective for failing to raise any claims other than competency on direct appeal.    He contends appellate counsel "failed to investigate the case, failed to discover that the silver flip-top phone the state claimed belonged to Magee and used in support of their case in fact did not belong to Magee, and failed to raise the meritorious Brady/Napue claim(s) which McCray raised herein."    He also submits that appellate counsel should have challenged the ineffective assistance he received from trial counsel based upon his failure to challenge the silver flip-top cell phone evidence used by the State.[25]    He contends the false evidence provided an erroneous basis for his second degree murder conviction.

"[A]ppellate counsel who files a merits brief need not (and should not) raise every

---

[25]  Rec. Doc. 1, pp. 83-84.

nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. at 288 (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). "Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent." *Id.*; *see also United States v. Tucker*, 434 F. Appx. 355, 362 (5th Cir. 2011) (per curiam) ("The Supreme Court has recognized 'the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review.' " (quoting *Barnes*, 463 U.S. at 752)).

Because McCray has not shown that the arguments he contends counsel should have raised on appeal had any basis in law or fact, he cannot show that his appellate counsel was constitutionally ineffective for failing to raise the claims on direct appeal. *Cf. Smith*, 528 U.S. at 288 (noting that proving Strickland's deficient performance prong is more difficult where an appellate merits brief is filed because a movant must show "that a particular nonfrivolous issue was clearly stronger than issues that counsel did present"). In considering McCray's other claims, including sufficiency of the evidence, the appellate court reasoned:

> The object that is the subject of a robbery does not have to belong to the person from whom the object was taken. Armed robbery is the taking of anything of value that is in the immediate control of another by use of force or intimidation, while armed with a dangerous weapon. *See* La. R.S. 14:64(A). Relator's contention that the cellular phone had to belong to the victim is meritless, and his claims that are based upon this contention are also without merit. More importantly, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the

essential elements of second degree murder were proven beyond a reasonable doubt.[26]

The appellate court correctly noted McCray's faulty premise underlying his claims based upon the allegation that the cell phone did not belong to the victim.    Additionally, for the reasons discussed in this report, the Court finds no merit to his claims of ineffective assistance of trial counsel or a *Brady/Napue* violation.    His assertions amount to nothing more than self-serving, conclusory speculation that the testimony or evidence was false and that the prosecutor knew or should have known it was false, or that any exculpatory or impeaching evidence was in fact suppressed by the State.    McCray has failed to establish a reasonable probability that the outcome of the appeal would have been different had appellate counsel raised claims based on McCray's theory that the cell phone did not belong to the victim.

Moreover, here the sole issue counsel raised on appeal was undeniably strong and deserved the focus of the appellate court's attention.    Raising any other issues would have obscured the overriding issue on appeal that the trial court failed to rule on McCray's competency prior to trial.    In fact, the court of appeal found that the claim had potential merit and remanded for a *nunc pro tunc* determination on competency.    Because one of appellate counsel's important duties is to focus on those arguments most likely to succeed, counsel will not be found constitutionally ineffective for failure to raise every conceivable

---

[26] State Rec., Vol. 6 of 7, *State v. McCray*, 2014-KW-0231 (La. App. 1st Cir. June 2, 2014).

issue.    *Smith*, 528 U.S. at 288; *Jones*, 463 U.S. at 754.    Accordingly, counsel's omission of the issues proposed by McCray cannot be considered ineffective assistance.

The state court's decision rejecting his claims of ineffective assistance of trial and appellate counsel was neither contrary to nor an unreasonable application of *Strickland*. Accordingly, McCray is not entitled to *habeas* relief on these claims.

3. *Brady Violation (Claim 5)*

McCray contends that the prosecutor failed to disclose information, exculpatory in nature, which would have shown that "the phone in question did not belong to McGee but to someone else," which could have been used to impeach Detective Galloway's testimony and ultimately preclude any conviction for second degree murder.    *Brady v. Maryland*, 373 U.S. 83, 87 (1963).    The state courts denied this claim on the merits.

Under *Brady*, the prosecution's failure to disclose evidence on demand that is favorable to an accused violates due process when that evidence is material either to a defendant's guilt or punishment.    *Id.*    Evidence used to impeach a witness falls under the *Brady* rule.    *United States v. Bagl*ey, 473 U.S. 667, 676, (1985).    To prevail on a *Brady* claim, a *habeas* petitioner must show that (1) the state withheld evidence, (2) the evidence was favorable to the accused, and (3) the evidence is material to guilt or punishment." *DiLosa v. Cain*, 279 F.3d 259, 262–63 (5th Cir.2002).    Evidence is material if there is a " 'reasonable probability' that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.    A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."    *Bagley*, 473 U.S. at 682.    However,

the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome, does not establish "materiality" in the constitutional sense.    *United States v. Agurs*, 427 U.S. 97, 109–110 (1976).

The record shows that information surrounding the retrieval and investigation of the cell phone was contained in a supplemental police report.    The State provided open file discovery and made all police reports available to the defense.    In fact, defense counsel acknowledged at trial that he was aware of the cell phone obtained by police as the result of their investigation.    At trial, Detective Galloway testified candidly about recovering the phone and the link established through phone records between the victim and McCray.    Although McCray disputes the truthfulness of that testimony, characterizing it as "suspicious" because the subpoena for phone records predated the actual receipt of the recovered phone, his assertions amount to nothing more than hypothetical speculation. Moreover, these unsupported allegations do not show that the police and the prosecution possessed evidence that the silver flip phone did not belong to the victim.    McCray offers no factual or legal basis to support his claim that the police investigation surrounding the cell phone in question, in fact, produced any exculpatory evidence or impeachment evidence.

*Habeas* relief cannot be granted on unsupported speculation.    *United States v. Stanford*, 823 F.3d 814, 842 (5th Cir. 2016).    Where, as here, a petitioner presents no evidence whatsoever, such as an affidavit from trial counsel, in support of a contention that *Brady* material was in fact withheld from the defense, his claim fails at the initial prong of the

*Brady* inquiry.    *Id.*; *see*, *e.g.*, *Williams v. Cain*, Nos. 06–0224 and 06–0344, 2009 WL 1269282, at *5 (E.D. La. May 7, 2009) (citing *Watson v. Cain*, Civ. Action No. 06–613, 2007 WL 1455978, at *7 (E.D. La. May 17, 2007); *Abron v. Cain*, Civ. Action No. 05–876, 2006 WL 2849773, at *10 (E.D. La. Oct. 3, 2006); *Harris v. United States*, 9 F.Supp.2d 246, 275 (S.D.N.Y. 1998) ("[T]he government does not bear the burden of establishing that documents were not withheld; it is [petitioner's] burden to prove that the government failed to disclose evidence favorable to [him].), *aff'd*, 216 F.3d 1072 (2nd Cir. 2000); *United States v. Avellino*, 136 F.3d 249, 261 (2nd Cir. 1998); *Cruz v. Artuz*, 97–CV–2508, 2002 WL 1359386, at *14 (E.D.N.Y. June 24, 2002)).    Under these circumstances, the state court's denial of McCray's claim of a *Brady* violation was neither contrary to nor an unreasonable application of United States Supreme Court law.

4. *Procedural Default - Sufficiency of the Evidence; Prosecutorial Misconduct; Denial of Right to Compulsory Process (Claims 2, 4, 7)*

    The State asserts that McCray failed to exhaust claims two, four, six and seven[27] because, although the claims were raised at the district court level on post-conviction review,

---

[27]  These enumerated claims in his federal application include:    (2) his conviction was based upon insufficient evidence; (4) the state prosecutor knowingly introduced false evidence at trial; (6) appellate counsel was ineffective for failing to raise issues on appeal; and (7) he was denied the right to compulsory process because he was unable to subpoena witnesses for trial.    In his federal application, McCray combines his discussion of actual innocence and sufficiency of the evidence together as claim two.    This report will reference the above enumerated claim numbers, but for the sake of clarity, the Court notes these claims correspond respectively to his state-court post-conviction claims, enumerated as follows: (1) actual innocence; (3) prosecutorial misconduct; (5) insufficiency of the evidence; (6) ineffective assistance of counsel on appeal; and (7) denial of the right to compulsory process.

he did not urge the substantive merits of those claims in either the intermediate court of appeal or the Louisiana Supreme Court; instead he asserted only that the district court erred in applying a procedural bar and refusing to consider several enumerated claims. Furthermore, the State argues that claims two, four and seven are procedurally barred regardless.

> The United States Fifth Circuit Court of Appeals has held:
>
> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision. To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims. This rule applies to state court judgments on both substantive and procedural grounds.

*Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir.2001) (citations omitted).    Moreover, where a lower court has rejected a claim on procedural grounds, later opinions upholding that decision are presumed to rely on the same grounds if reasons are not assigned.    *Id.* ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground.").

In this case, the state courts were clearly presented with an opportunity to consider McCray's claims, but declined to do so based on express and independent state-law procedural grounds, thus satisfying the exhaustion requirement but implicating the

procedural-default doctrine.    The state district court declined to consider claims two, four,

six and seven.    The court of appeal found the ruling correct as to claims two, four and seven

based upon Louisiana Code of Criminal Procedure article 930.4 (B) and (C) (*i.e.*, his failure to

raise the claims in the proceedings leading to conviction or on direct appeal).    However,

the court of appeal found the procedural rule inapplicable to claim six, which asserted

ineffective assistance of counsel on appeal, and thus denied the remaining claims, including

claim number six, on the merits.    The Louisiana Supreme Court then denied relief without

additional stated reasons.    Thus, the State is correct in arguing that claims two, four and

seven are procedurally defaulted.[28]

Federal courts have repeatedly held that Louisiana Code of Criminal Procedure article

930.4 is an "independent" and "adequate" state rule to support a procedural bar in federal

court.    *See Allen v. Vannoy*, 2016 WL 4254375, at *6-7 (5th Cir. 2016); *Castro v. Tanner*, Civ.

Action No. 12-2049, 2014 WL 2938355, at *8 (E.D. La. June 27, 2014); *Parks v. Cain*, Civ.

Action No. 12-0297, 2014 WL 505329, at *8 (E.D. La. Feb. 6, 2014); *Simmons v. Cain*, Civ.

Action No. 06-2130, 2008 WL 2185422, at *4-6 (E.D. La. May 20, 2008); *Neal v. Cain*, Civ.

Action No. 06–8714, 2012 WL 730223, at *6–7 (E.D. La. Feb 14, 2012); *Washington v. Cain*,

Civ. Action No. 98–0584, 2000 WL 863980, at *4 (E.D. La. June 27, 2000).    Where, as here,

the procedural rules invoked by the state courts are "independent" and "adequate," "federal

---

[28]  Because the Louisiana First Circuit ruled on the merits of claim six and the State does not argue that the claim was procedurally defaulted, the Court has considered claim six (ineffective assistance of appellate counsel) on the merits.

habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." *Hughes v. Johnson*, 191 F.3d 607, 614 (5th Cir.1999).    In the instant case, petitioner demonstrates neither.

"To establish cause for a procedural default, there must be something external to the petitioner, something that cannot fairly be attributed to him."    *Johnson v. Puckett*, 176 F.3d 809, 816 (5th Cir.1999) (quotation marks omitted).    McCray has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana First Circuit. To the extent he implies that these grounds for relief are not procedurally defaulted because ineffective assistance of counsel provides cause, this Court has reviewed his ineffective assistance of counsel claims and found them to be without merit, thereby providing no cause for the default.    *See Edwards v. Carpenter*, 529 U.S. 446, 451-52, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000) (citing *Murray v. Carrier*, 477 U.S. 478, 488–489 (1986)).    "Absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice." *Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir.1996).

When a petitioner fails to meet the "cause and prejudice" test, a federal court is to consider his claim only if the application of the procedural bar would result in a "fundamental miscarriage of justice."    That exception is a limited one which exists only if a petitioner makes a colorable showing that he is "actually innocent."    *See Bagwell v. Dretke*, 372 F.3d 748, 757 (5th Cir.2004); *Lucas v. Johnson*, 132 F.3d 1069, 1077 (5th Cir.1998).

McCray has not presented any new reliable evidence to support an assertion of actual innocence which would allow this Court to consider his defaulted claims.

Accordingly, for the foregoing reasons, the Court finds McCray's claims that his conviction was not supported by sufficient evidence, prosecutorial misconduct and denial of the right to compulsory process, procedurally barred from federal review.

### RECOMMENDATION

**IT IS RECOMMENDED** that McCray's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc).[29]

New Orleans, Louisiana, this 23rd day of _____ August _____, 2016.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[29] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.